UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: )<br>)<br>BAVARIA INN RESTAURANT, INC. )<br>a Colorado Corporation )<br>d/b/a Shotgun Willies )<br>EIN 84-0725727 )<br>)<br>Debtor. )<br>)<br>) | Case No. 20-17488 EEB<br>Chapter 11 |

---

**BAVARIA INN RESTAURANT, INC'S OBJECTION AND RESPONSE TO CREDITOR MCCLURE'S MOTION FOR ENTRY OF ORDER GRANTING RELIEF FROM STAY**

---

Debtor-in-Possession, Bavaria Inn Restaurant, Inc. d/b/a Shotgun Willies ("Bavaria" or "Debtor"), by and through its counsel, Law Offices of G. Stephen Long Esq. and Weinman & Associates, P.C., submits its Objection and Response to creditors and parties-in-interest, Charles McClure's Motion for Entry of Order Granting Relief from Stay.

### INTRODUCTION

1. On November 18, 2020, Bavaria filed its petition for relief (the "Bankruptcy Petition") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. Pursuant to 11 U.S.C. § 362(a), Bavaria is automatically entitled to a stay (the "Stay") of certain actions by creditors to pursue or collect judgments, including but not limited to continuation of civil lawsuits that were initiated before the filing of the Bankruptcy Petition.

3. On April 30, 2020, McClure filed a lawsuit against Bavaria and in Arapahoe County District Court case number 2020CV30913, styled *Charles McClure, v. Bavaria Inn Restaurant, Inc. d/b/a Shotgun Willie's, a Colorado Corporation, and Jonathan Ruiz, an individual, Derek Scott, an individual, Brian Festog, an individual, and Eduardo Ambrizharos an individual* (the "McClure State Court Lawsuit").

4.     On December 15, 2020, McClure, by and through their counsel, filed their Motion for Entry of Order Granting Relief from Stay ("McClure's Motion").  On the same date, a separate claimant, Wright, by and through his same counsel, filed his Motion for Entry of Order Granting Relief from Stay.  Inexplicably, counsel for the Wrights also represent McClure even though the Wrights have competing interests in the insurance proceeds which will be, by counsels' own admission, insufficient to satisfy the Wrights' sought-after judgment. The arguments presented in the Wrights' Motion and McClure's Motion are substantially similar.  Both Motions contend that analysis of the applicable factors from *In re Curtis* warrant lifting the Stay to allow the Wright State Court Lawsuit and the McClure State Court Lawsuit (collectively, the "State Court Lawsuits") to proceed despite Bavaria's bankruptcy proceedings.  *In re Curtis*, 40 B.R. 795, 799-800 (Bankr.D.Utah 1984).  The Court should deny the McClure Motion for the reasons stated below.

5.     The Motion misconstrues the *Curtis* factors, overstates the impact to the McClure should the Stay remain in place, and understates the harm to Bavaria should the Stay be lifted.  Proper analysis of the *Curtis* factors demonstrates the Stay should remain in place for the duration of Bavaria's bankruptcy proceedings.

6.     Permitting relief would have a substantial negative impact on the viability of the debtor by: (1) distracting from the bankruptcy restructuring; (2) the expense of exposure above and beyond the policy limits; and (3) the economic impact of the negative press associated with the trial.

7.     Allowing the Relief from stay is economically impractical. First, the total amount available to all unsecured creditors in this case will be limited (estimated $500,000 - $1,000,000), and, if McClure receives a judgment in his favor in excess of $2,000,000, they will be entitled to only a pro-rata share of those funds.  Second, the administrative costs required for debtor to defend these claims are to the detriment of all parties involved, as they directly reduce the amount each claimant or creditor could obtain.  Finally, the harm a Relief from Stay would have to the other creditors and the debtor is far more substantial than the harm McClure asserts (predominantly delay in their case).

## OBJECTION AND RESPONSE

8.     The automatic bankruptcy stay is one of the most fundamental debtor protections provided by the bankruptcy laws.  *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984).

9.     The automatic stay broadly extends to all matters which may have an effect on a debtor's estate, enabling bankruptcy courts to ensure that debtors have the opportunity to rehabilitate and reorganize their operations.  *See, e.g., In re Johns-Manville Corp.*, 801 F. 2d 60, 62, 63-64 (2d Cir. 1986).  "Such jurisdiction is necessary to exclude any interference by the acts of others or by proceedings in other courts where such activities or pro-

2

ceedings tend to hinder the process of reorganization." *Fidelity Mortgage Inv. v. Camelia Builders, Inc.*, 550 F.2d 47, 53 (2d Cir. 1976).

10. Relief from stay may only be granted "for cause" after notice and a hearing. Because "cause" is not further defined in the Bankruptcy Code, relief from stay for cause is a discretionary determination made on a case by case basis. *Busch v. Busch* (In re Busch)*,* 294 B.R. 137, 140 (B.A.P. 10th Cir. 2003). In light of the strong policy favoring the automatic stay whereby "even slight interference with the administration [of the Debtor's estate] may be enough to preclude relief," *In re Curtis*, 40 B.R. 795, 806 (Bankr.D.Utah 1984), the party seeking to lift or modify the automatic stay bears the initial burden to show cause why the stay should be lifted. "If the movant fails to make an initial showing of cause ... the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *See In re Sonnax Industries*, 907 F.2d 1280, 1285 (2d Cir. 1990).

11. Twelve factors were identified in *In re Curtis*, 40 B.R. 795 at 799-800, as some of the issues a bankruptcy court might consider when determining whether to lift the stay to permit pending litigation in another forum. *In re Busch*, 294 B.R. 137, at 141. There are a number of the *Curtis* factors that do not apply to this case. The most important *Curtis* factors for the court to consider in respect to the Motion at issue are: (2) the lack of any connection or interference with the bankruptcy case; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (7) whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings had progressed to the point where the parties were prepared for trial; and (12) the impact of the stay on the parties and the "balance of the hurt."

12. A more in-depth consideration of the pertinent *Curtis* Factors demonstrates the Motion should be denied and the Stay should remain, as explained below:

2. The Lack of any Connection or Interference with the Bankruptcy Case:

McClure argues that allowing the State Court Lawsuits to proceed would assist the bankruptcy court because Plaintiffs could obtain a final judgment and liquidate their claims. However, permitting relief would substantially interfere with the Bankruptcy case and threaten the viability of the debtor by: (1) distracting from the bankruptcy restructuring; (2) increasing the expense of exposure above and beyond the policy limits; and (3) the economic impact of the negative press associated with the trial.

First, allowing the relief from stay would will materially and adversely affect Bavaria's bankruptcy by distracting key personnel for Bavaria who would then have to work to reorganize while simultaneously defending against two (Wrights and Mc-

3

Clure) complex state civil suits. The Bankruptcy Restructuring Plan is due to be filed within 30 days and debtor is currently deeply involved with counsel and an expert witness (motion to be filed imminently) to formulate projections and a liquidation analysis. The overriding theme in determining whether to grant relief from the stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate. *In re Danzik*, 549 B.R. 804, 806 (Bankr. D. Wyo. 2016). The extensive involvement, time and effort of key Bavaria personnel should be spent focusing on Chapter 11 restructuring for the benefit of all creditors.

Second, McClure is pursuing a claim well in excess of the $2,000,000 policy limits. Because of that additional exposure, there will be defense costs and attorneys' fees beyond those borne by Bavaria's insurance carrier. The applicable insurance policy in this case is too small to satisfy several plaintiffs' potential recoveries and thus, lifting the Stay could start a "race to the courthouse" and create unfair results as between potential plaintiffs and creditors. *In re Sunland, Inc.*, 508 B.R. 739, at 744; *Tringali*, 796 F.2d 553, at 560. It could also prevent the bankruptcy court from marshalling the insurance proceeds, and, along with other assets, arranging for their distribution so as to maximize their ability both to satisfy legitimate creditor claims and to preserve the debtor's estate. *Id*.

Third, there will undoubtably be negative press associated with the debtor if this case is permitted to proceed. This case is absolutely defensible; however, regardless of the outcome, the negative press and repetitional damage will have a significant impact on the business, its revenue, and its ability to pay creditors. That negative press will impact the viability of the company and inhibit the distribution of funds to any creditor pursuant to the restructuring.

Thus, this factor weighs strongly in favor of keeping the Stay because the State Court Lawsuits will significantly interfere with the bankruptcy case if the Stay is lifted. In addition, lifting the stay could affect the interests of other creditors and interested parties.

5. <u>Whether the Debtor's Insurance Company has Assumed Full Financial Responsibility for Defending the Litigation</u>:

Here, the litigation costs of Hall & Evans, LLC—the defense counsel assigned to the civil cases—are primarily borne by Bavaria's insurer; however, as discussed above, since McClure is seeking a judgment far in excess of policy limits, and there are two separate state lawsuits, there are limits to the insurance coverage and defense. Bavaria, because of the "bet the company" nature of the McClure lawsuit, will be forced to pay additional fees and expenses beyond the limited insurance coverage to give itself the best chance success. Moreover, insurance coverage is inadequate to

4

compensate both the claimants in the event of one or more adverse judgments in the Lawsuits, let alone other similarly situated claimants and creditors.

Courts in the Tenth Circuit have denied stay relief in order to preserve the bankruptcy estate and protect insurance proceeds from multiple creditors. The court in *In re Sunland, Inc.* noted that allowing one plaintiff to proceed could deplete the pool of available insurance funds at the expense of other claimants. *In re Sunland, Inc.*, 508 B.R. 739, 744 (Bankr. D.N.M. 2014). As stated by the court in *In re Sunland, Inc.*, a number of courts have declined to grant stay relief to one claimant where the available insurance coverage was inadequate to compensate other similarly situated claimants. *See, e.g., Matter of Gatke Corp.*, 117 B.R. 406, 410 (Bankr. N.D. Ind. 1990) (motion for relief from automatic stay denied because insurance was not adequate to pay all claims); *In re Davis*, 730 F.2d 176, 185 (5th Cir. 1984) (affirming the bankruptcy court's decision to keep stay in place because "intact insurance coverage [i]s a bulwark against erosion of the estate").

This factor weighs heavily in favor of keeping the Stay, because while Bavaria's insurance company has assumed financial responsibility for defense costs payable under the policy and for indemnity up to policy limits, the assumption of financial responsibility is far from "full."

7. <u>Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors, the Creditors' Committee and Other Interested Parties</u>:

As explained above, the State Lawsuits would prejudice the interests of other creditors because McClure is seeking a judgment far in excess of insurance policy limits, and there are two separate state lawsuits. Further, the very viability of Bavaria is threatened by continuation of the State Court Lawsuits while Bavaria simultaneously attempts to reorganize in bankruptcy, and therefore the interests of other creditors will be jeopardized if the Stay is lifted. Furthermore, the additional increase in administrative expenses incurred will decrease the pool available to unsecured creditors and, ironically, McClure as well.

This factor weighs in favor of keeping the Stay because the State Court Lawsuits could and will affect the interests of other creditors and interested parties.

10. <u>The Interest of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties</u>:

Allowing the Relief from stay is economically impractical. Lifting the Stay would continue the costly litigation of the State Court Lawsuits, with no corresponding economic benefit. First, Bavaria projects that upon completion of Chapter 11 restructuring the total amount of funds that will be available for distribution to all unsecured

5

creditors will range from $500,000 to $1,000,000. If McClure prevails in the State Court Lawsuits and become judgment creditors, they will only recover their pro rata share of the total pool. Bavaria's unsecured creditors, including Coal Creek Partners, LLC (with its own $3,000,000 claim), and others, will also be entitled to their pro rata share. Given this small pool of funds it does not make economic sense to grant relief from the Stay, because prosecution of the State Court Lawsuits, if successful beyond the $2,000,000 insurance policy limits, will only result in inconsequential recovery on McClure's claim. Given the funds available and the number of unsecured creditors, it is pointless to threaten the viability of the debtor when likely McClure will only recover a de minimis amount beyond Bavaria's insurance proceeds.

Second, the administrative costs required for debtor to defend this claim will not be insignificant. Debtor would be required to pay an estimated $125,000 for separate counsel involvement to protect debtor's interests. Separate counsel is necessary to protect debtors interests and will likely incur expert fees which the insurance carrier may be unwilling to cover. All administrative costs will be paid first and therefore deducted from the pro-rata payments to each creditor. to pay Thus, the interests of judicial economy and expeditious and economical determination of litigation would be thwarted if the Stay is lifted.

This factor weighs in favor of keeping the Stay because Bavaria can focus on efficiently moving through bankruptcy without the needless disruption of the State Court Lawsuits. Upon Bavaria exiting bankruptcy, the parties can proceed with the State Court Lawsuits forthwith.

11. <u>Whether the Foreign Proceedings had Progressed to the Point Where the Parties Were Prepared for Trial</u>:

The State Court Lawsuits are far from trial. Although progress towards trial has been made, the parties are not prepared for trial and will not be prepared for many more months. Trial courts are significantly back-logged due to the COVID-19 closures. The pandemic has caused large delays in all civil dockets. Furthermore, there is a significant amount more discovery to conduct, much of which will be done at the cost of debtor because of the excessive amount sought by McClure. The case is also not anticipated to end at trial; there will likely be lengthy and costly appeals associated with a large judgment.

Thus, this factor supports keeping the Stay so that Bavaria can reorganize its business through bankruptcy and then return its full attention to defense of the State Court Lawsuits.

12. <u>The impact of the stay on the parties and the "balance of the hurt"</u>:

6

This factor weighs the financial hardship to both sides. While the impact to both sides should be considered, courts should not shift the financial burden from another party to the debtor because "to do so would contravene the fundamental policy in favor of economic administration of debtors' estates." *In re Curtis*, 40 B.R. 795, 806. McClure alleges he will suffer hardship if the Stay remains and that "[c]ourts have attributed considerable weight to the fact that a plaintiff, by reason of a bankruptcy filing, may effectively be denied the opportunity to obtain a determination of liability due to the passage of time." McClure's Motion at ¶ 16. There is simply no evidence that the Stay will deny McClure an opportunity to obtain a determination of liability. Rather, the Stay will protect proper administration of the estate during the short duration of the bankruptcy, and then the State Court Lawsuits may resume without any effect on the McClure's ability to obtain a judgment should they prevail. On the other hand, Bavaria will suffer significant financial hardship if the Stay is lifted due to the need to devote time and resources to both the bankruptcy and defense of the State Court Lawsuits. As discussed above, the viability of the business will be severely threatened by the involvement of key personnel in defense of the suits, defense costs, and negative publicity surrounding trial in the McClure State Court Lawsuit.

In sum, in balancing the harms to the parties, the potential harm to McClure is delay. The potential harm to debtor and other creditors is the destruction of the debtor's business, the complete failure of the bankruptcy restructuring, and debtor's subsequent inability to pay any and all creditors. McClure's harm (of delay) is substantially overstated in the McClure's Motion. The harm caused by delay is further undermined given the fact that movants will likely only recover a de minimis amount beyond the insurance policy coverage due to the bankruptcy restructuring. Finally, McClure's rights are protected in the form of prejudgment statutory interest for any delays which may occur from denial of relief from Stay. The harm a Relief from Stay would have to the other creditors and the debtor is substantial and incomparable to the harm McClure's claim (predominantly delay in trying their claims).

## **CONCLUSION**

17. The Court should deny the McClure's Motion because lifting the Stay would have substantial negative impact on the viability of the debtor and allow economically impractical litigation. The harm a Relief from Stay would have to creditors, the debtor, and the claimants themselves is substantial and incomparable to the harm McClure is asserting he would suffer. Proper analysis and application of the *Curtis* factors demonstrates the Stay should remain in place for the duration of Bavaria's bankruptcy proceedings.

**WHEREFORE**, Debtor-in-Possession, Bavaria Inn Restaurant, Inc. d/b/a Shotgun Willies respectfully requests that the McClure's Motion for Entry of Order Granting Relief from Stay be denied.

Respectfully submitted this 7th day of January, 2021.

                                              WEINMAN & ASSOCIATES, P.C.

Date:  1/7/2020               By: /s/ Jeffrey A. Weinman
                                        Jeffrey A. Weinman, #7605
                                        730 17th Street, Suite 240
                                        Denver, CO 80202-3506
                                        Telephone: (303) 572-1010
                                        Facsimile: (303) 572-1011
                                        jweinman@weinmanpc.com


Date:   1/7/2020                LAW OFFICES OF G STEPHEN LONG
                                        By: /s/ G Stephen Long
                                          G Stephen Long, #17252
                                          215 Adams Street
                                          Denver, CO 80206
                                          Telephone: (303) 600-1638
                                          slong@gsltrial.com