UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | Case No. 20-17488-EEB |
| BAVARIA INN RESTAURANT, INC. ) | Chapter 11 |
| dba Shotgun Willies ) | |
| a Colorado Coporation ) | |
| EIN: 84-0725727 ) | |
| ) | |
| Debtor. ) | |

**<u>OBJECTION TO CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION</u>**

Creditors Lucy Pinder, Dessie Mitcheson, and Carmen Electra (together, the "Creditors"), by and through their undersigned counsel, hereby object to the Plan of Reorganization for Small Business Under Chapter 11, Subchapter V (the "Plan") and in support, state as follows:

**I. INTRODUCTION**

1. Bavaria Inn Restaurant, Inc. d/b/a Shotgun Willie's ("Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on November 18, 2020 (the "Petition Date").

2. Debtor filed its Plan of Reorganization for Small Business Under Chapter 11, Subchapter V (the "Plan") on February 16, 2021 (Dkt. No. 97).

3. The Creditors object to confirmation of the Plan for the reasons that follow.

**II. BACKGROUND**

4. The Debtor misappropriated and altered the Creditor's Images to advertise and promote Debtor's strip club (the "Club") without the Creditor's permission, and did so with no compensation to Creditors for the use of their Image.

5. On January 30, 2019, the Creditors initiated a lawsuit against Debtor in a case styled *Pinder et al v. Bavaria Inn Restaurant, Inc. d/b/a Shotgun Willie's Inc., a/k/a Shotgun Willies* in the United States District Court, for the District of Colorado, Case No. 1:19-cv-00259-LTB-STV. Creditors' First Cause of Action is for Debtor's Violation of the Lanham Act, 15 U.S.C. §1125(a) for False Advertising and False Endorsement. Creditors' Second Cause of Action is for State Common Law Misappropriation of Likenesses; Violation of Right to Privacy; and Right of Publicity. A true and accurate copy of the original Complaint and Jury Demand Lawsuit filed in the United States District Court – District of Colorado was attached to each of the Creditors' filed Proof of Claims (*See* Proof of Claim Numbers 12, 13, and 14).

6. In Creditors substantial experience in litigating dozens of similar lawsuits against similarly situated strip-club defendants – such as Bavaria Inn – strip clubs employ incestuous corporate schemes to avoid paying taxes and hide assets. One of the most common schemes is to implement common ownership affiliations/subsidiaries whereby the strip-club is owned by a commonly held entity that enjoys substantial monthly "rent," typically in the realm of $25,000 - $50,000 per month. The property that the strip club operates is owned by a commonly held entity, usually owned in large part by the same person/persons that owns the strip-club entity. In some cases, another entity, with common ownership, is established that "leases" out employees to the strip club entity. Nothing about how a strip-club operates is ever at "arms-length." To the contrary, they employ sham corporate structures to avoid taxes and hide assets from potential creditors. Bavaria Inn is no exception.

### III. ARGUMENT

A. <u>The Debtor Transferred its Assets to a Related Entity</u>

7. Glendale Holdings, LLC ("GH") is a Colorado limited liability company formed or registered on August 7, 2019. The ownership structure and management structure of GH are essentially identical to that of the Debtor. Deborah Matthews a/k/a Deborah Dunafon ("Matthews") owns 53% of the shares or stock in the Debtor.

8. The Operating Agreement of GH is signed by Bavaria Inn Restaurant, Inc., "Deborah M Dunafon, President" and by Glendale Holdings, LLC, "Deborah M. Dunafon, Manager." A true and accurate copy of the Operating Agreement of Glendale Holdings, LLC was attached as Exhibit B in the Objection filed on behalf the "Wrights" (*See* Dkt. No. 119-2)

9. It is clear that the intent and purpose of the formation of GH, the intent of the shareholders of SGW and Matthews was to create a new entity, transfer valuable assets from Debtor to GH, and then distribute the membership interest in GH to the shareholders of Debtor. The net result of the anticipated transactions would have been to leave GH and its shareholders with all of the most valuable assets of the Debtor without providing the Debtor with any real value in return.

10. On the Petition Date, the Debtor reports that it had $905,004.03 in petty cash and financial accounts, liquor inventory of $24,676.20, furniture fixtures and equipment of $48,000.00, a building and improvements with a book value of $2,000,000.00, for a total of $3,070,052.61 in assets. The Debtor also reports that on the Petition Date it had secured debt of $2,107,288.00 and unsecured debt of $1,056,100.97, including alleged debts of $750,000.00 to Coal Creek Partners, LLC ("Coal Creek") and $112,335.34 to Mount Vernon Management, Inc. ("Mount Vernon"). Upon information and belief, Coal Creek is owned by at least some of the same individuals that own the Debtor. Deborah Dunafon a/k/a Matthews ("Matthews"), the Debtor's president, is also

the signatory for Coal Creek. Any common owners between the Debtor and Mount Vernon and are not disclosed in the Plan.

B. <u>The Debtor's Profitability and Lack of Timely Post-Petition Financial Reporting</u>

11. Since the Petition Date, the Debtor has filed its Monthly Operating Report for Small Business Under Chapter 11 (the "MOR") for the time-period of November 18, 2020 – December 31, 2020 which was filed on February 3, 2021 (Dkt. No. 84) and for the time-period of January 2021 which was filed on March 24, 2021 (Dkt. No. 121). The Debtor's monthly operating report for February 2021 was due on March 21, 2021 and as of this date, it has not been filed.

12. The Debtor's MOR for January 2021 is incomplete and fails to provide (a) a list of payables since the Petition Date; (b) a list of receivables since the Petition Date; (c) a comparison of actual cash receipts and disbursements from previous projections; and (d) financial reports; budget projection or forecast reports. Although the January MOR states that it includes bank statements and reconciliation reports for each account, they were not actually included in the report.

13. Due to the Debtor's lack of required financial reporting and the inadequacy of the disclosures contained in the Plan, information regarding the Debtor's post-petition finances is incomplete. However, the December 2020 MOR does disclose that through November 30, 2020, the Debtor generated net income before expenses of $3,413,611.47. The MOR also discloses that during the same time-period, the Debtor paid $418,865.76 to "Management," perhaps payments to Mt. Vernon or perhaps distributions to shareholders, $96,000.00 as "Corporate Officer Salary," $262,578.99 in legal expenses, and $750,000.00 in "Land Rent" to Coal Creek (which is confusing since the Plan refers to minimum monthly rent that was previously less than $25,000 per month). In response to question 4.4 of the Statement of Financial Affairs (Dkt. No. 32) filed on December

4

1, 2020, the Debtor reports that through October 31, 2020, $558,000.00 was distributed to the Debtors' shareholders. Despite the COVID-19 pandemic and distributions of at least $558,000.00 to the Debtor's shareholders, the Debtor's net profits were only $181,575.03 in the red as of November 30, 2020. On page 8 of its Plan, Debtor states that it "was not insolvent during any relevant time period for the avoidance of transfers."

14. It appears that the Debtor's business is increasing month over month as the pandemic is more and more under control. The December 2020 MOR discloses that from November 18, 2020 – December 31, 2020, the Debtor received cash receipts of $136,939.70. That amount increased by approximately 58% to $327,637.83 during the shorter time frame of January 2021.

15. Given the Debtor's ability to pay significant amounts to related entities and its shareholders during 2020, the Debtor appears to have devised an additional strategy to make it appear that the Debtor is unable to satisfy the legitimate claims of its creditors.

16. At a minimum, the deal between the Debtor/Coal Creek and Debtor/GH should be subject to additional scrutiny given the common ownership of the two entities. "The case law clearly holds that when a debtor in possession seeks to settle a dispute with its parent company or with another related party, the court should give greater scrutiny than in the usual case." *In re Dow Corning Corp.*, 192 B.R. 415, 428 (Bankr. E.D. Mich. 1996).

C. The Plan Has Not Been Proposed in Good Faith

17. The Debtor's (a) failure to disclose common ownership in related entities; (b) relative financial health; (c) overly pessimistic projections and valuations; (d) failure to provide required financial disclosures; and (e) additional problems with the Plan outlined below all

demonstrate that the Debtor's bankruptcy is an attempt to use the COVID-19 pandemic as a shield to limit the Debtor's liability in six pending lawsuits to a small portion of $865,381.00.

18. Pursuant to 11 U.S.C. §§ 1191(a) and 1129(a), the Plan must "be proposed in good faith." Under 11 U.S.C. § 1191(b) if all of the requirements of 1129(a) are satisfied, other than paragraphs (8), (10), and (15), the Court can confirm a plan so long as the "plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interest that is impaired under, and has not accepted the plan." The Creditors in Class 6 and they have rejected the Plan.

19. Because the Creditors hold an unsecured claim, the "the fair and equitable" requirement is met if:

> a. "The plan provides that the debtor's projected disposable income received in a three-year period, or such longer period not to exceed five years, is applied to make payments under the plan;
>
> b. There is a reasonable likelihood the debtor can make all plan payments; and
>
> c. The plan provides remedies to protect the holder of claims or interests if payments are not made."

*In re Ellingsworth Residential Cmty. Ass'n, Inc.*, No. 6:20-BK-01346-KSJ, 2020 WL 6122645, at *2 (Bankr. M.D. Fla. Oct. 16, 2020). In the 10th Circuit, the requirement of good faith has been evaluated using the following standard:

> In assessing good faith, "courts have looked to whether the debtor intended to abuse the judicial process and the purposes of the reorganization provisions." Paige, 685 F.3d at 1178; *Pikes Peak Water*, 779 F.2d at 1460.
>
> A standard such as "good faith" requires a court to assess the "totality of the circumstances." *Rocky Mountain Land*, 2014 WL 1338292 at *9. Put another way, in addition to assessing technical compliance with the Bankruptcy Code and

>feasibility, the court also should consider "whether a plan is proposed with honesty and sincerity" and "whether a plan's terms or the process used to seek its confirmation was fundamentally fair." Riviera Drilling, 2012 WL 6719591 at *5 (citing *In re Global Water Tech., Inc.*, 311 B.R. 896, 903 (Bankr.D.Colo.2004)).

*In re Autterson,* 547 B.R. 372, 399 (Bankr. D. Colo. 2016).

20. In addition to the reasons outlined above, the Plan is not proposed in good faith and is not fair and equitable because it proposes to prevent creditors from participating in any upside should the Debtor's actual financial performance exceed its dour projections. As written, the Debtor's Plan proposes to pay unsecured creditors out of a pool of funds of $865,000.00 representing the alleged present value of the Debtor's projected profits over five years. Thus, the Plan proposes to pay a fixed amount and does not provide for distribution of the Debtor's "disposable income." Neither does the Plan provide any remedies to protect the Creditors should the Debtor fail to make the required payment(s).

21. The Creditors believe that the Debtor's assets and business are worth much more than stated in the Plan and that the Plan fails to comply with the requirement of 11 U.S.C. § 1129(a)(7)(A)(ii) that the Creditors receive "property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date."

22. Finally, the classification scheme in the Plan unfairly discriminates against similarly situated tort claimants by placing them in unequal classes.

### IV. CONCLUSION

23. The Debtor's Plan should not be confirmed. It is not proposed in good faith and it is not fair and equitable. It undervalues the Debtor's assets and projected income, prefers related entities with questionable claims, unfairly discounts the already underestimated projected profits,

and continues a pattern of wrongfully seeking to avoid paying the legitimate claims of the Creditors.

WHEREFORE, the Creditors respectfully request that the Court deny confirmation of the Debtor's Plan and grant the Creditors Lucy Pinder, Dessie Mitcheson, and Carmen Electra such relief as deemed appropriate.

Dated: March 29, 2021                                          Respectfully submitted,

*/s/ Joseph N. Casas*
Joseph N. Casas, Esq.
*Attorney for the Creditors*
THE CASAS LAW FIRM, P.C.
11844 Bandera Road, Suite 500
Helotes, Texas 78023
P: 855-267-4457
F: 855-220-9626
joseph@talentrights.law

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 29, 2021, service of the foregoing OBJECTION TO CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION made by the Court's CM/ECF system on all parties that receive service in this case using the e-mail addresses on file with the Court as obtained from the parties-in-interest's Notices of Entry of Appearance and on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED.R.BANKR.P. and these L.B.R. to the following:

Jeffrey A. Weinman, #7605
730 17th Street, Suite 240
Denver, CO 80202-3506
Telephone: (303) 572-1010
Facsimile: (303) 572-1011
jweinman@weinmanpc.com

Paul V. Moss, Esq.
U.S. Trustee's Office
1961 Stout St., Ste. 12-200
Denver, CO 80294
Paul.Moss@usdoj.gov

Bavaria Inn Restaurant, Inc.
dba Shotgun Willies
ATTN: Deborah Dunafon, President
490 S. Colorado Blvd.
Denver, CO 80246

G. Stephen Long, Esq.
GSL Trial Lawyers
650 South Cherry Street, Suite 825
Glendale, CO 80246
slong@gsltrial.com

Harvey Sender
Subchapter V Trustee
600 17th Street, Suite 2800 South
Denver, CO 80202
hsender@sendertrustee.com

David J. Warner, Esq.
Wadsworth Garber Warner Conrardy, P.C.
2580 W. Main St., Suite 200
Littleton, CO 80120
dwarner@wgwc-law.com

Duncan E. Barber, Esq.
Shapiro Bieging Barber Otteson LLP
7979 E. Tufts Ave., Ste. 1600
Denver, CO 80237
dbarber@sbbolaw.com

Darrell G. Waas, Esq.
Waas Campbell Rivera Johnson & Velasquez LLP
1350 17th Street, Suite 450
Denver, CO 80202
waas@wcrlegal.com

Scott Saltzman, CPA
Saltzman LLC
5655 S. Yosemite St., Suite 205
Greenwood Village, CO 80211
scott@saltzmanllc.com

Peter R. Bornstein, Esq.
The Law Offices of Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
pbornstein@prblegal.com

                                        *s/ Joseph N. Casas*
                                        Joseph N. Casas, Esq.
                                        The Casas Law Firm, P.C.
                                        11844 Bandera Rd., #509
                                        Helotes, TX 78023
                                        joseph@talentrights.law