UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| BAVARIA INN RESTAURANT, INC. ) | Case No. 20-17488 EEB |
| a Colorado Corporation ) | Chapter 11 |
| d/b/a Shotgun Willies ) | |
| ) | |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |

**RESPONSE TO MOTION TO CONTINUE HEARING AND RESET DEADLINES**

Debtor, Bavaria Inn Restaurant, Inc. d/b/a Shotgun Willies ("Bavaria" or "Debtor"), by and through its counsel, Law Offices of G Stephen Long, LLC and Weinman & Associates, P.C., submits its Response to Claimants' Motion to Continue Hearing and Reset Deadlines (the "Motion"), and in support thereof state as follows:

**I. PRELIMINARY STATEMENT**

1. Objector Wrights seek a continuance from a confirmation hearing and discovery schedule to which they agreed, attempting to blame Objector's lack of readiness on Debtor's failure to timely provide information. As will be discussed below in detail as to each example, nothing could be further from the truth.

2. From the beginning of these Chapter 11, Subchapter V proceedings, in each substantive pleading Objector has made assertions designed to discredit Debtor in the eyes of the Court. These repeated assertions are well beyond what is permitted under applicable civil procedural rules.

3. First, Objector filed a Motion for Relief from Stay, asserting that its "claim" arose out of an incident at Debtor's place of business in which an employee applied a "chokehold" to Mr. Wright resulting in death. (Mot. for Relief from Stay, Ex 1, Dec 15, 2020, Dkt. No. 45.) Indeed, a video of the incident submitted to this Court demonstrates the contrary. Not only was no chokehold applied by any Bavaria personnel, but in fact the tragic accidental death was caused by Mr. Wright's prolonged aggression toward another patron, including a chokehold applied by Mr. Wright on the other patron.

4. Second, Objector has repeatedly referenced a pre-bankruptcy transaction involving a transfer of an asset (the business' building) from Bavaria Inn Restaurant, Inc. ("Bavaria") to Glendale Holdings, LLC. ("Glendale"), an LLC owned by Bavaria's owners before the Wright incident, as a fraudulent conveyance. Voluntarily, and following the concern expressed by Objector's Counsel, Bavaria and Glendale Holdings reversed the conveyance. Accordingly, not only is the Objector's assertion factually inaccurate, but it is also legally wrong. *See In re Polichuk,* 506 B.R. 405 (Bankr. E.D. Pa. 2014).

5. Third, Objector has filed the present Motion to Continue asserting, inter alia, a letter authored by an experienced industry professional (Troy Lowrie), concerning reasonable management compensation, was actually authored by Mike Dunafon, the spouse of Deborah Matthews Dunafon, the majority owner of Bavaria. This assertion was made without any conferral whatsoever and the assertion is patently false as, discussed below.

6. Finally, the attempt to cloak this Motion to Continue the mantle of legitimacy based on assertions of Debtor's actions or inactions, without a legitimate conferral as required by Local Bankruptcy Court Rules, is nothing more than an illegitimate effort to mask a complete lack of diligence on the part of the Objector's exemplified best by the fact Objector's Counsel was attempting to retain a valuation expert as late as April 29, 2021 (11 days prior to Objector's expert disclosure deadline), a full 74 days after Debtor's plan was filed, and Scott Saltzman's valuation and projections were known, and 24 days after the schedule was agreed to and ordered.

## II. FACTUAL AND PROCEDURAL HISTORY

7. On November 18, 2020, the Debtor filed with this Court a voluntary petition for relief under Chapter 11, of the Bankruptcy Code.

8. On February 16, 2021, Debtor filed its Subchapter V Plan of Reorganization (the "Plan"). Debtor filed bankruptcy specifically under Subchapter V in order to take advantage of what was expected to be a less time consuming and less costly procedure enabling the survival of the small business. Debtor has met each and every deadline in order to avail itself of the advantages of a Subchapter V bankruptcy. This effort would be thwarted if this Motion were granted.

9. Debtor's Plan was assigned a Subchapter V Trustee, Harvey Sender, who made recommendations for the amendment of the Plan, to which Debtor promptly conceded and agreed to reflect in a formal filing of the Amended Plan. Everyone else had blessed it.

10. Debtor and the Subchapter V Trustee then filed a Stipulation to Amend the Plan (the "Stipulation") conceding that, with the agreed upon amendments, he would not be filing objections to the plan.

11. Nonetheless, on March 24, 2021, Wright and McClure filed identical Objections to the Confirmation of Plan Reorganization (the "Objection") commencing this contested matter. The

Wrights and McClure are represented by the same counsel in the state court actions. The statements in the Objections essentially attack the reasonableness of the projections on which Debtor's Plan relies. These projections are not Debtor's projections. They are the projections of an independent expert, Scott Saltzman.

12. Although Claimant McClure did not join in the Motion to Continue, the McClure state court action arises from an incident occurring at 2:30am, Sunday, May 27, 2019. The incident resulted in McClure being charged with disorderly conduct and his accomplice, Nathaniel Johnson, being charged with felony assault with injury by a dangerous weapon. The victim of these crimes was an employee of Bavaria.

13. The other contingent litigation Claimants — Carmen Electra, Lucy Pinder, and Dessie Mitcheson — are expected to withdraw their objections prior to the Confirmation Hearing based on an agreed upon settlement between Debtor and Claimants, which is currently being documented.

14. Debtor has shown the independently developed projections to the the Subchapter V Trustee and they will again be evaluated at the Confirmation Hearing. Even if the projections are adjusted substantially in a more optimistic light, the unsecured creditors would be worse off by virtue of the legitimate debt owed Coal Creek than they would be under the proposed Confirmation Plan.

15. On April 5, 2021, the Court held a Preliminary Hearing on the Plan and Plan Objections. Counsel for all interested parties were present.

16. Counsel for all parties were heard on the matter of scheduling and each had an opportunity to persuade the Court of the appropriate date for the Confirmation Hearing. The Court then compromised between requests and suggested a time schedule to which both parties agreed.

17. After having heard from counsel for all interested parties, the Court set discovery deadlines and a new date for the Confirmation Hearing to address the contested matter — June 1, 2021. (Order and Notice of Evidentiary Zoom Hr'g, April 5, 2021, Dkt. No. 150.) For the following 32 days, Debtor diligently conducted and responded to discovery and prepared for the June 1 hearing with no mention of a continuance from Movant.

18. On May 7, 25 days before the hearing, the Wrights filed their Motion to Continue Hearing and Reset Deadlines. (Mot. to Continue Hr'g and Reset Deadlines, ¶ 1, May 7, 2021, Dkt. No. 157.)

19. Now, after significant effort on Debtor's side to prepare for the upcoming hearing, Movant's request not only a mid-June date, as they had in the Preliminary Hearing, but an additional **51 days** beyond the date set by the Court — July 21, 2021.

20. It appears Movant has waited until the last minute to complete the work to substantiate their objections. Therefore, the Motion is nothing more than an attempt to avoid deadlines already litigated and agreed to.

### III. ARGUMENT

21. Movant seeks a Continuance based on 7 reasons, to be discussed below. Each reason is either: (A) an unfounded accusation that Debtor caused the delay, or (b) an unjustified attack on information they have had months to refute. Each reason is merely an excuse for Movant's own delay in preparing for the June 1 hearing.

A. <u>Unfounded Accusations Debtor Failed to Disclose Requested Information.</u>

*Common Interest Privilege*

22. The Motion alleges that Debtor failed to respond to certain discovery requests by asserting the common interest privilege. The Motion claims that the privilege assertion undermines the legitimacy of the land lease dispute between Coal Creek and Bavaria. (Mot. to Continue Hr'g and Reset Deadlines, ¶ 16-22, May 7, 2021, Dkt. No. 157.)

23. Not only is it legally false that the assertion of the common interest privilege produces an adverse inference, as implied by the Motion, but Debtor's Counsel offered to show the communications to Objector's Counsel during a discovery discussion on May 7, 2021, within an hour of the filing of this Motion.

24. Debtor's Counsel, in good faith, offered the communications in their entirety to Objector's Counsel, without waiving any privilege. Debtor's Counsel explained that, in the unlikely event Movant determined it wanted to admit any of the communications, the parties could dispute the relevance of privilege and admissibility of the documents at that time.

25. Due to the fact that the communications contained little relevant information, Debtor's Counsel determined that an off-the-record review of the documents by opposing counsel would resolve the issue without the need for additional evidentiary dispute.

26. Objector's Counsel indicated a willingness to consider the proposal, and expressed his preliminarily thought that the offer was satisfactory and would resolve the dispute. The Motion was filed within an hour after that discussion and includes no mention of the offer made by Debtor's Counsel. An assertion that Debtor has failed to respond to Movant's request is false and not in the interest of cooperative discovery.

27. Regardless, both Coal Creek and Debtor have provided Objector's Counsel the correspondence at issue.

*Troy Lowrie Letter*

28. The Motion implies that Mr. Saltzman relied only on a letter authored by Troy Lowrie in concluding that the management fees paid to Mt Vernon were reasonable. (Mot. to Continue Hr'g and Reset Deadlines, ¶ 24-25, May 7, 2021, Dkt. No. 157.)

29. In evaluating the reasonableness of the management fees paid to Mt. Vernon, Mr. Saltzman relied on significantly more than just the Troy Lowrie letter in coming to the conclusion that the fees were reasonable and within industry standards, including (as noted on page 67 of his expert report) compensation data from an independent source, ERI Salary Assessor. *See Ex 1.*

30. In addition to independent research, Mr. Saltzman has education and experience in the valuation of businesses in the gentleman's industry and is well-qualified to offer opinion testimony as to what compensation is reasonable based on that education and experience.

31. The Motion then calls into question the reliability of the Troy Lowrie Letter itself, and seems to imply that Ms. Matthews' husband, Mike Dunafon, wrote the letter on behalf of Mr. Lowrie. This is demonstrably false.

32. The Motion asserts that "the metadata of the Lowrie Letter provided by the Debtor reveals that Mike Dunafon (the husband of Deborah Dunafon a/k/a Matthews) is the author of the Lowrie Letter . . . ." (Mot. to Continue Hr'g and Reset Deadlines, ¶ 25, May 7, 2021, Dkt. No. 157.)

33. Movant made no request of Debtor to explain this discrepancy or offer an explanation. The first time Debtor was made aware of this matter was within an hour before the Motion was filed.

34. Had Movant inquired into the issue prior to filing the Motion, they would have been informed of the fact that the letter was sent to Mike Dunafon via e-mail correspondence from Troy Lowrie. That correspondence indicated that Mr. Lowrie did not know which last name Ms. Matthews was using in her professional capacity (Matthews or Dunafon). Mr. Dunafon responded and made a single change to the document to properly reflect Ms. Matthews last name. Evidently, the metadata shows Mike Dunafon made that change to the document. *See Ex 2.*

*Mr. Saltzman's missing documents*

35. The Motion asserts that Debtor failed to provide Mr. Saltzman's invoices and timekeeping records.

36. Movant asserts that ". . . on April 20, 2021, the Wrights through counsel requested that Mr. Saltzman's file be produced, including his invoices and timekeeping records. The only additional documents provided were Mr. Saltzman's invoices and an affidavit regarding his employment in

5

the bankruptcy case." (Mot. to Continue Hr'g and Reset Deadlines, ¶ 9, May 7, 2021, Dkt. No. 157.)

37. However, Debtor provided, via e-mail, responsive documents to the Movant's request on April 26, including the invoices, affidavit, and a reference to the documents provided in the Requests for Production, which included his "file" as requested.

38. Debtor has not received any response to the e-mail providing such discovery. Debtor was under the impression that the documents provided were sufficient and included all information requested by the Wrights. The appropriate way for counsel for the Wrights' to discuss the issue would have been to respond to the e-mail indicating what they believe had not been provided or to discuss the request via conferral, neither of which occurred.

39. On May 4, Objector's Counsel served on Debtor a 2nd Set of Requests for Production requesting only "a report or summary listing the Debtor's daily sales figures (daily amount of gross revenue) from all sources from January 1, 2019[,] through the date of Your response." *See Ex 3*.

40. On May 7, Parties conferred about this production, and Debtor's Counsel made a proposal regarding how Debtor would proceed with providing that information.

41. Debtor's Counsel assured Objector's Counsel everything practicable would be done to provide the documents in a timely manner. Debtor has not heard back from Objector's Counsel on this issue. Nonetheless, Objector's Counsel asserts Debtor is in some way intentionally withholding information.

B. <u>The remainder of Movant's complaints are simply and unjustified and delayed attacks on information they have had since the Confirmation Plan was filed (February 16, 2021) and are matters best addressed during cross examination.</u>

*Related Entities*

42. The Motion states that Debtor needs to conduct additional discovery regarding transactions to related entities. (Mot. to Continue Hr'g and Reset Deadlines, ¶ 23, May 7, 2021, Dkt. No. 157.)

43. As Movant is fully aware, there is nothing nefarious about Bavaria paying management fees and land leases to a related entity. Bavaria and Ms. Matthews have been fully transparent as to the payments made and the contracts under which Bavaria is required such payments.

44. Moreover, Movant fails to identify what additional information they hope to obtain through additional discovery as all ownership interests and financial payments have already been fully disclosed.

45. These payments to related entities have been known by Movant since well before this Motion was filed and no additional discovery was initiated by Movant. Still not having initiated additional discovery, they have requested more time to do so.

*Mr. Saltzman's report is wholly unsupportable.*

46. The Motion asserts that the discovery schedule is inadequate given the unsupported, unreliable, or inappropriate assumptions. (Mot. to Continue Hr'g and Reset Deadlines, ¶ 29, May 7, 2021, Dkt. No. 157.)

47. First, the alleged flaws in Mr. Saltzman's report is an issue for cross examination and litigation. The alleged flaws in Mr. Saltzman's analysis in no way justify the request to continue to extend the bankruptcy litigation.

48. Movant has Scott Saltzman's projections since the Plan was filed on February 16. Movant's appear to have made no effort to evaluate the accuracy of the projections offered by the Scott Saltzman, a recognized, independent valuation expert in the months following the filing of the Plan.

49. Movant asserted the need to retain their own expert at the hearing on April 5 and agreed to the Court suggested discovery deadlines. Movant has had Mr. Saltzman's expert report since April 20. And yet, Movant waited until at least April 29 to retain its own expert or make any meaningful effort to evaluate the efficacy of Mr. Saltzman's projections.

50. Furthermore, it is clear that the objections to Mr. Saltzman's report offered by Mr. Levis' letter are unfounded and an additional delay tactic.

    a. *Mr. Levis' letter asserts that Mr. Saltzman's revenue forecasts are unreliable.*

51. Mr. Saltzman's revenue forecasts are based on IBIS World's — a nationally recognized, independent company — future estimated revenue for the gentlemen's entertainment industry.

52. Mr. Saltzman's future revenue projections are included on page 66 of the valuation report and exceed the IBIS World projections so as to ensure the estimates were reasonable under the circumstances.

    b. *Mr. Levis' letter alleges that Mr. Saltzman ignores publicly available indications of pandemic recovery in the industry.*

53. To justify this assertion, Mr. Levis relies on data obtained from RCI Hospitality Holdings, Inc. ("Rick's"). Ricks is a public company, and in fact, Ricks is the only publicly traded gentlemen's club. For that reason, Ricks has an ongoing obligation to promote shareholder faith in its business and future revenue.

54. Because of the potential for bias, Mr. Saltzman relied instead on the future estimated revenue for the gentleman's entertainment industry by IBIS World, due to the organization's unbiased nature and fact based data.

    *c. Mr. Levis' letter asserts that Debtor is making above market payments to affiliated companies.*

55. With regard to **corporate officer compensation**, Mr. Saltzman's valuation data was based on independent data, knowledge of the industry, and personal investigation of Debtor. Mr. Saltzman not only used the letter from Mr. Lowrie, but as noted on page 67, compensation data from a well respected and independent source, ERI Salary Assessor.

56. With regard to **management fees to Mt Vernon**, Mr. Saltzman's valuation data was based on independent data, knowledge of the industry, and personal investigation of Debtor. Management fees to Mt Vernon were evaluated compared to total officers' compensation. Total officers' compensation was evaluated in Mr. Saltzman's report on pages 66-67. Mr. Saltzman not only used the letter from Mr. Lowie, but as noted on page 67, compensation data from a well respected and independent source, ERI Salary Assessor.

57. With regard to the **land lease**, the accrual data due to Coal Creek is fully disclosed in Mr. Saltzman's valuation report, pages 52-53, and was based on was based on independent data, knowledge of the industry, and personal investigation of Debtor.

58. With regard to the **option rental expense**, that expense is not paid to a related party, but were payments made related to prior litigation, as discussed in Mr. Saltzman's valuation report on page 19.

### IV. MOVANT FAILED TO ADEQUATELY CONFER

59. The conferral obligations on counsel found in the Federal Rules of Civil Procedure and the local Bankruptcy Rules should be enforced and taken seriously. The fundamental goals of these obligations are best understood by this Court and need no repeating.

60. Meaningful conferral in this case on the pending Motion would have resolved each issue raised by Objector, including an agreed outcome, if appropriate, to accommodate Objector's Counsel's vacation schedule and provide Objector adequate time to prepare. The Motion was prepared well before any conferral and filed within an hour of a purported partial conferral that was in no stretch of the imagination a good faith conferral.

61. In this case, Debtor's Counsel received an e-mail dated May 4, 2021, from Objector's Counsel raising the issues regarding conferral AND demanding a response within 24 hours, i.e. before the next day May 5, 2021.

62. Debtor's Counsel called Objector's Counsel, who had requested the conversation, on May 5 (pursuant to the request) and left a voicemail. Debtor's Counsel received no response, despite the urgency asserted in Objector's Counsel letter.

63. Debtor's Counsel again called Objector's Counsel on May 6 and received no response.

64. Finally, on May 7, Objector's Counsel agreed to a 10:30am meeting that morning regarding the e-mail and conferral.

65. During the conferral late morning Friday May 7, 2021, attended by Mr. Long for the Debtor, Mr. Waas for Coal Creek, and Mr. Warner for Objector, the following issues were disclosed; "common interest" privilege and Objector's Expert's request for daily cash receipts. Debtor's Counsel proposed solutions to Objectors Counsel which were accepted as reasonable subject to client conferral. The Troy Lowrie letter was referred to by Objector's Counsel, but Debtor's Counsel knew nothing about it and proposed to look into it and get back.

66. On the matter of authenticity, Debtor's Counsel agreed to discuss with his client and co-counsel and get back to Objector's Counsel.

67. During the conferral call, Objector's Counsel stated that the Motion had been drafted and he was directed to file it. The Motion was filed within an hour of the call.

68. The deceptive attempt at conferral was not only disingenuous, but failed to satisfy even the bare minimum requirements for such a conferral. There was no attempt or desire to resolve any dispute, compromise on discovery deadlines, or address any substantive issues.

## V. CONCLUSION

69. Ultimately, the assertions in the Motion to Continue Hearing and Reset Deadlines are baseless and serve only as an attempt to legitimize Movant's procrastination. Respectfully, Debtor requests this Court consider the legislative intent of the Subchapter V bankruptcy law, the lack of substantive objections from Movant, and the improper conferral, and uphold the previously set deadline for the Confirmation hearing.

**WHEREFORE**, Debtor, Bavaria Inn Restaurant, Inc. d/b/a Shotgun Willies, respectfully requests that Claimant's Motion be denied.

Respectfully submitted this 14 of May, 2021.

LAW OFFICES OF G STEPHEN LONG

9

By: /s/ G Stephen Long
  G Stephen Long, #17252
  650 S Cherry Street
  Suite 825
  Glendale, CO 80226
  Telephone: (303) 800-1706
  slong@gsltrial.com


WEINMAN & ASSOCIATES, P.C.

By: /s/ Jeffrey A. Weinman
  Jeffrey A. Weinman, #7605
  730 17th Street, Suite 240
  Denver, CO 80202-3506
  Telephone: (303) 572-1010
  Facsimile: (303) 572-1011

10